ORDERED.

**Dated: September 30, 2026**

Lori V. Vaughan
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re:<br><br>William Joseph Delaney,<br><br>Debtor. | Case No. 6:23-bk-02574-LVV<br>Chapter 7 |
| Pravati Credit Fund, III, LP, a Delaware limited partnership,<br><br>Plaintiff,<br>v.<br><br>William Joseph Delaney, an individual,<br><br>Defendant. | Adv. No. 6:23-ap-00148-LVV |

## **MEMORANDUM OPINION**

Pravati Credit Fund, III, LP, ("Plaintiff" or "Pravati") filed a complaint seeking a determination that the amounts owed by defendant, William Joseph Delaney ("Debtor") under a judgment are not dischargeable under 11 U.S.C. § 523(a)(2)(A), (a)(2)(B), (a)(4) and (a)(6).[1] After trial on the complaint, the parties submitted written closing arguments and the Court took the

[1] Doc. No. 1.

matter under advisement.[2] Having considered the evidence and arguments of the parties, the Court finds that Plaintiff did not establish the required elements under § 523 for the judgment debt to be deemed nondischargeable. Judgment will be entered in favor of Debtor on Plaintiff's complaint.

**Background Facts**

Debtor is a trial attorney and owner of Delaney Law, PC, an Illinois professional corporation ("Law Firm"). On June 14, 2018, Law Firm and Pravati entered into a Law Firm Legal Funding Contract and Security Agreement ("Agreement").[3] Debtor signed the Agreement on behalf of the Law Firm. Under the Agreement, Pravati promised to provide Law Firm with $1 million on or before June 29, 2018 and an additional $600,000 upon request.[4] In return, Law Firm promised that Pravati would receive a portion of the fees and costs the Law Firm recovered from its cases until the amounts owed to Pravati had been paid with interest. The Law Firm's portfolio of cases, attached to the Agreement, had an estimated gross potential recovery of over $26 million ("Portfolio").[5] Of the Portfolio, two clients—Yachtlife Technologies Inc. and Patrick Curley—had cases with estimated values totaling over $12 million ("Yachtlife/Curley Cases").[6]

As security for their obligations under the Agreement, Law Firm provided Pravati with a first lien security interest on all accounts and receivables of the Law Firm, including fees and costs recovered from the Portfolio and all future cases.[7] By the Agreement, Law Firm agreed that the funds provided by Pravati could be used for past, current, and future litigation costs, payment of expenses associated with operating a law practice, and federal, state and/or local taxes owed by

[2] The trial was held on October 16, 2025. Due to several extensions, the parties' written closing arguments were not filed until February 23, 2026, after which this proceeding was ripe for determination.
[3] Pravati Ex. 1, Agreement.
[4] Pravati Ex. 1, Agreement Schedule A-Term Sheet.
[5] Pravati Ex. 1, Agreement Schedule B-Law Firm List of Cases and Related Proceedings.
[6] Pravati Ex. 1, Agreement Schedule B-Law Firm List of Cases and Related Proceedings.
[7] Pravati Ex. 1, Agreement ¶ 5, Agreement Schedule A- Term Sheet.

the Law Firm, among other items.[8] Debtor signed a Limited Guaranty of the Law Firm's obligations under the Agreement.[9] Pursuant to the Agreement, Pravati advanced $1 million (the "Funds") to the Law Firm.

Law Firm Taxes

Before receiving receipt of the Funds, Law Firm, through Debtor, made several statements to Pravati respecting taxes. On June 7, 2018, Pravati emailed Debtor asking that he confirm "the following state and federal tax liens and/or judgments have been satisfied, have been removed or are incorrectly showing against Delaney Law…" and listed 21 liens that had been filed between 2010 through 2015. Debtor promptly responded by email stating "[t]his confirms the liens showing have been satisfied, removed or are incorrectly showing against Delaney Law." (collectively "June 7 Email").[10] By the Agreement, Law Firm represented that it "has paid all of its federal, state, and local taxes through the date of execution of this Agreement or has made provisions for the payment." ("Tax Payment Provision")[11] Debtor, under penalty of perjury, also signed a statement attached to the Agreement, representing there were no encumbrances or liens subject to the Agreement ("Lien List Statement").[12]

Nine months after receipt of the Funds, on April 5, 2019, Law Firm provided Pravati with bank statements of its operating account dated July 2018 through February 2019 ("Bank Statements").[13] The Bank Statements listed the following debits from the operating account:

| Date | Transaction | Debit |
|---|---|---|
| 9/19 | IRS USATAXPYMT | $ 1,711.89 |
| 9/24 | IDR LEVY | $ 973.16 |

[8] Pravati Ex. 1, Agreement ¶ 4, Agreement Schedule A- Term Sheet.
[9] Pravati Ex. 1, Agreement Schedule D- Limited Guarantee Agreement.
[10] Pravati Ex. 2.
[11] Pravati Ex. 1, Agreement ¶ 17.
[12] Pravati Ex. 1, Agreement Schedule C-Law Firm List of Encumbrances and Liens.
[13] Pravati Ex. 4.

| | | |
|---|---|---|
| 11/20 | IRS LEVY | $ 23,057.49 |

Debtor testified at trial that after payment of the tax levy on November 20, 2018, any alleged tax debt of the Law Firm had been paid in full and operations of the Law Firm were not interrupted by the levy.[14]

Default Letter & Litigation

On October 31, 2019, counsel for Pravati sent notice of default and demand letters to Law Firm and Debtor ("Default Letters").[15] The Default Letters informed Law Firm and Debtor that due to the listed events of default, the non-recourse nature of the Agreement was converted to recourse and under the Agreement, Law Firm could not retain any proceeds from its cases until Pravati was paid in full.

Pravati later filed suit against Law Firm and Debtor in the Arizona Superior Court.[16] On July 8, 2021, the Arizona Superior Court entered a Judgment for Pravati against Law Firm and Debtor, jointly and severally, in the amount of $2,094,196.94, plus costs of $2,206.59, together with interest ("Judgment").[17]

Bankruptcy & Adversary Proceeding

Debtor filed a chapter 7 bankruptcy case on June 28, 2023.[18] Pravati filed this adversary proceeding seeking a determination that the amounts owed under the Judgment are excepted from discharge under § 523.[19] Debtor answered the complaint, denying many of the allegations and asserting several affirmative defenses.[20] The parties had an opportunity to engage in discovery and

[14] Doc. No. 110, Trial Tr. 161:10.
[15] Pravati Ex. 10, 11.
[16] Pravati Ex. 9.
[17] Pravati Ex. 9.
[18] *In re William Joseph Delaney*, Case No. 6:23-bk-02574-LVV (Bankr. M.D. Fla. filed June 28, 2023)("Main Case"). Main Case Doc. No. 1.
[19] Doc. No. 1. Plaintiff filed the complaint on December 18, 2023.
[20] Doc. No. 5.

a one-day trial was held in October 2025.[21] Pravati presented evidence and offered the testimony of Ivan Mora ("Mora"), who is the Director of Asset Management for Pravati. Debtor presented evidence and testified as well. The Court admitted into evidence Pravati's exhibits 1, 2, 4, 9 through 11, pages 22 through 23 of Exhibit 12 and Exhibit 14.[22] At the conclusion of trial, the Court required the parties to submit written closing arguments.[23]

## **Legal Analysis**

Bankruptcy allows honest but unfortunate debtors a fresh start by relieving them from prepetition debt. *See Grogan v. Garner*, 498 U.S. 279, 286-87 (1991); *St. Laurent v. Ambrose, (In re St. Laurent)*, 991 F.2d 672, 680 (11th Cir. 1993). A bankruptcy discharge of prepetition debts does have limits. *Grogan,* 498 U.S. at 287. Section 523 of the Bankruptcy Code reflects a congressional decision to exclude certain types of debt from discharge based upon the theory that creditors' interests in recovering full payment of these debts outweighs debtors' interests in a complete fresh start. *Grogan* 498 U.S. at 287*; In re Harris,* 3 F.4th 1339, 1344 (11th Cir. 2021). These exclusions, however, are construed narrowly and in favor of the debtor. *Spring Valley Produce, Inc. v. Forrest* (*In re Forrest)*, 47 F.4th 1229, 1235 (11th Cir. 2022)(exceptions under § 523 are construed narrowly); *Avren v. Daniel (In re Daniel)*, 613 B.R. 374, 379(Bankr. M.D. Fla. 2020)(exceptions under § 523 are strictly construed in favor of the debtor and against the creditor). The exclusions at issue in this proceeding are debts obtained by fraud, debts for fraud or defalcation while acting in a fiduciary capacity, and debts for willful and malicious injury by the debtor. 11 U.S.C. § 523(a).

---

[21] The trial was held on October 16, 2025.
[22] Doc. No. 106.
[23] Doc. Nos. 118, 119, 120, 121.

11 U.S.C. § 523(a)(2)(A)

Any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition...." is excluded from discharge under § 523(a)(2)(A). To establish nondischargeability § 523(a)(2)(A), a plaintiff must prove by a preponderance of the evidence that: (1) debtor used false pretenses, or made a false representation, or committed actual fraud; (2) plaintiff relied on debtor's conduct; (3) plaintiff's reliance was justified; and (4) debtor's conduct caused plaintiff's loss. *Harris*, 3 F.4th at 1344-45 (citing *In re Bilzerian*, 153 F.3d 1278, 1281 (11th Cir. 1998)). *See also Grogan*, 498 U.S. 279 (preponderance of the evidence standard of proof).

Pravati asserts Debtor (i) concealed that the Law Firm never intended to pursue the Yachtlife/Curley Cases which consisted of more than half the Portfolio's value; (ii) represented that the Funds would be used for litigation of the Portfolio but used them elsewhere, and (iii) concealed tax enforcement activity by the Internal Revenue Service and Illinois Department of Revenue against the Law Firm.[24] In support of these allegations, Pravati cites to Debtor's testimony at trial, Bank Statements and the Agreement itself. Having considered Debtor's testimony and evidence presented at trial, the Court concludes Pravati did not prove by a preponderance of the evidence that Debtor obtained the Funds by false pretenses, a false representation, or actual fraud as required by § 523(a)(2)(A).

As an initial matter, Pravati's assertion that Debtor concealed tax enforcement activity by the Internal Revenue Service and Illinois Department of Revenue fails with a plain reading of §

[24] Doc. No. 118, p.7; Doc. No. 120, p.2.

523(a)(2)(A). Section 523(a)(2)(A) excludes statements respecting a debtor's or an insider's financial condition. A statement is one respecting a financial condition if it has "a direct relation to or impact on" the overall financial status of the debtor or insider. *See Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709, 720 (2018). Here, whether or not the Internal Revenue Service and Illinois Department of Revenue are enforcing a tax lien or levy clearly has a direct relation to the overall financial status of the Law Firm. Accordingly, Debtor's alleged concealment respecting tax liens or levies may not be the basis to determine the Judgment nondischargeable under § 523(a)(2)(A).

As to the remaining assertions, Pravati failed to prove Debtor intended to deceive Pravati with such assertions or concealment considering the totality of circumstances.[25] A cornerstone component of any § 523(a)(2)(A) proceeding is the debtor's intent to deceive the creditor. *See Harris*, 3 F.4th at 1345 (actual fraud component is any fraud "done with wrongful intent"; false pretense and false representation component each require an "intentional wrong" and "must have been knowingly and fraudulently made"); *In re Aman*, 492 B.R. 550, 564 (Bankr. M.D. Fla. 2010)(cornerstone element in a §523(a)(2)(A) proceeding is a misrepresentation made with the intent to deceive the creditor). To prove an intent to deceive, "the debtor must be guilty of positive fraud, or fraud in fact, involving moral turpitude or intentional wrong, and not implied fraud, or fraud in the law, which may exist without the imputation of bad faith or immorality." *They Might Be Inc., v. Carter (In re Carter)*, 593 B.R. 354, 361(Bankr. M.D. Fla. 2018)(quoting *Schweig v. Hunter (In re Hunter)*, 780 F.2d 1577, 1579 (11th Cir. 1986)(abrogated on other grounds by *Grogan v. Garner,* 498 U.S. 279 (1991)); *see also BMO Harris Bank, N.A. v. Richert (In re Richert),* 632 B.R. 877, 894 (Bankr. M.D. Fla. 2021). Determining whether a debtor has the

[25]Concealment or silence as to a material fact may constitute a false pretense under § 523(a)(2)(A). *Taylor v. Wood (In re Wood)*, 245 F. App'x. 916, 918 (11th Cir. 2007).

requisite intent to deceive is "a fact-based inquiry based, in part, on the debtor's credibility and demeanor." *Criswell Chevrolet, Inc. v. Prifti* (*In re Prifti)*, No. 8:20-bk-07999-RCT, 2021 WL 3629313, *3 (Bankr. M.D. Fla. Aug. 21, 2021) (citing *Equitable Bank v. Miller (In re Miller)*, 39 F.3d 301, 304 (11th Cir. 1994)). Because fraudulent intent is rarely admitted, courts consider the totality of circumstances to make that determination. *Id*. *See also Richert,* 632 B.R. at 894.

Pravati failed to demonstrate by a preponderance of the evidence that Debtor intended to deceive Pravati by concealing that Law Firm never intended to pursue the Yachtlife/Curley Cases or that Debtor intended to deceive Pravati by representing the Funds would be used for litigation of the Portfolio. First, there is no indication from the evidence presented that Debtor represented the Funds would be used solely to fund litigation of the Portfolio. The Agreement itself allows the Funds to be used for a variety of matters, including for working capital of the Law Firm.[26] Nor is there any indication that Debtor or Law Firm never intended to pursue the Yachtlife/Curley Cases before receiving the Funds. At trial, Debtor credibly testified that the Law Firm could not pursue the Yachtlife/Curley Cases as it lacked enough funding to do so and the authority to do so from its clients—Yachtlife/Curley.[27] The Portfolio listed almost all of the Yachtlife/Curley Cases as "engaged, file being worked up" with no other indication of whether the cases would be filed (or not).

The Agreement itself did not require the Law Firm to pursue litigation for the Portfolio and provided that the Law Firm has the sole right to make decisions with respect to the civil actions or claims.[28] Although Debtor testified that the primary reason to obtain funding was the Gunlicks case, which had not been listed on the Portfolio, Debtor testified that he verbally informed Pravati

[26] Pravati Ex. 1, Agreement ¶ 4, Agreement Schedule A- Term Sheet, Use of Capital.
[27] Doc. No. 110, Trial Tr. 165:16.
[28] Pravati Ex. 1, Agreement ¶ 9.

of the Gunlicks case, which Pravati did not dispute.[29] Simply put, the preponderance of the evidence favors the Debtor.

11 U.S.C. § 523(a)(2)(B)

Any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—(B) use of a statement in writing—(i) that is materially false; (ii) respecting the debtor's or insider's financial condition; (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive" is excluded from discharge under § 523(a)(2)(B). To prevail under § 523(a)(2)(B), a plaintiff must prove by a preponderance of the evidence that (1) debtor is liable for a debt obtained by the use of a written statement; (2) the statement was materially false; (3) the written statement was respecting the debtor's or an insider's financial condition; (4) plaintiff reasonably relied on the statement; and (5) debtor published the statement with intent to deceive plaintiff. *C&S Bldg. & Renovations, Inc.v. Minnix, (In re Minnix)*, No. 6:23-bk-03343-GER, 2025 WL 2803744, *5 (Bankr. M.D. Fla. Sept. 30, 2025).

Pravati asserts that Debtor knew the Law Firm had tax liens when he represented, through the June 7 Email and Lien List Statement, that no liens or encumbrances existed preventing perfection of Pravati's security interest.[30] In support of these allegations, Pravati refers to the testimony of Debtor and Mora at trial, Bank Statements, and the IRS Manual. Pravati argues evidence that (i) the Law Firm had payment plans with taxing authorities before the Agreement, (ii) the Law Firm had a tax attorney actively negotiating with taxing authorities, and (iii) the Law Firm's operating account had been levied a few months after the Agreement, proves Debtor knew

[29] Doc. No. 110, Trial Tr. 168:9; 172:11.
[30] Doc. No. 118, p. 9.

tax liens existed by operation of law and thus, falsely represented to Pravati in writing that the Law Firm had no liens.

As to the June 7 Email, Pravati did not establish that the statement was false. Although the Bank Statements demonstrate the Law Firm's account had debits for levies and payment of taxes, the Bank Statements do not identify the tax years or liens at issue for the levies. Nor is there any evidence before the Court that the procedures referenced in the IRS Manual for Levy were followed as to the Law Firm. Mora even testified that Pravati could not confirm if the levies on the Bank Statements were for any lien listed on the June 7 Email.[31] Furthermore, Debtor testified that the June 7 Email is accurate and that before sending the June 7 Email he conferred with the Law Firm's tax attorney and another law partner to confirm that all liens listed in the June 7 Email had been satisfied, removed or resolved.[32]

Although Debtor testified the Law Firm had payment plans with the IRS for outstanding tax debt, the record does not establish if the payment plans he referenced are for the tax liens listed in the June 7 Email.[33] The Court finds Pravati has not presented sufficient evidence to establish the falsity of the statement in the June 7 Email. As a result, Pravati failed to demonstrate by a preponderance of the evidence that the June 7 Email was a false statement and as such cannot form the basis for determining the Judgment nondischargeable under § 523(a)(2)(B).

As to the Lien List Statement, Pravati likewise failed to prove it was false. Although the Bank Statement demonstrates the Law Firm's account had debits for levies, the Bank Statement does not identify a tax lien or when the tax lien or encumbrance had been established. Nor is there any evidence before the Court that the procedures referenced in the IRS Manual for Levy were

[31] Doc. No. 110, Trial Tr. 108:10.
[32] Doc. No. 110, Trial Tr. 143:6; 146:1.
[33] Doc. No. 110, Trial Tr. 160:1.

followed as to the Law Firm. Debtor's testimony that the Law Firm had a payment plan for tax debt is troubling as the Lien List Statement regards all encumbrances and liens (and not just a specific period of time), but there is no evidence before the Court that a lien had been recorded or a demand notice sent to the Law Firm when Debtor signed the Lien List Statement. The Court finds Pravati has not presented sufficient evidence to establish the falsity of the Lien List Statement. As a result, Pravati failed to demonstrate by a preponderance of the evidence that the Lien List Statement was a false statement and as such cannot form the basis for determining the Judgment nondischargeable under § 523(a)(2)(B).

But even if the June 7 Email and Lien List Statement had been false, Pravati failed to establish that Debtor intended to deceive Pravati by publishing the statements based on the totality of circumstances. The same analysis to establish an intent to deceive under § 523(a)(2)(A) is used for § 523(a)(2)(B). *In re Aman*, 492 B.R. 550, 565 (Bankr. M.D. Fla. 2010). Debtor testified that during negotiations of the Agreement, Debtor informed Pravati representatives that the Law Firm had unpaid taxes and Pravati agreed to address it in the Agreement.[34] The Agreement specifically allowed the Funds to be used for the payment of taxes.[35] Further, in its representations, Law Firm represented that it paid all taxes *or has made provisions for their payment*.[36] Before sending the June 7 Email and signing the Lien List Statement, Debtor testified that he consulted with his law partner and the Law Firm's tax attorney to confirm the June 7 Email was accurate and he did not believe any liens existed.[37] Finally, after the levy, the Law Firm immediately replenished the bank account.[38] Pravati's security interest was affected for less than 24 hours. Based on these

[34] Doc. No. 110, Trial Tr. 147:20; 148:2.
[35] Doc. No. 110, Trial Tr. 148:20; 150: 1; Pravati Ex. 1, Agreement ¶¶ 4, 17.
[36] Doc. No. 110, Trial Tr. 148:20; 150: 1; Pravati Ex. 1, Agreement ¶¶ 4, 17.
[37] Doc. No. 110, Trial Tr. 146:1;161:8.
[38] Pravati Ex. 4, p. 51.

circumstances, the Court finds Pravati did not establish by a preponderance of the evidence that Debtor published the June 7 Email and Lien List Statement with the intent to deceive Pravati.

11 U.S.C. § 523(a)(4)

Any debt "for fraud or defalcation while acting in a fiduciary capacity" is excluded from discharge under § 523(a)(4). For a debt to be excluded for this reason, the debtor must commit "fraud or defalcation *while* acting in a fiduciary capacity" and debtor's fiduciary capacity must have existed "prior to the act which created the debt." *Librizzi v. Jimenez (In re Jimenez)*, 676 B.R. 813, 816 (Bankr. M.D. Fla. 2026)(quoting *Guerra v. Fernandez-Rocha*, 451 F.3d 813, 816 (11th Cir. 2006)). "Whether a debtor is a fiduciary under § 523(a)(4) is a question of federal bankruptcy law, not underlying substantive state or federal law." *Crockett v. Saks (In re Saks)*, No. 8:20-bk-07854-CPM, 2022 WL 18273866 *7 (Bankr. M.D. Fla. Dec. 30, 2022)(internal quotations omitted)). Under bankruptcy law, the fiduciary exception of § 523(a)(4) is "strict and narrow" requiring the relationship between the creditor and debtor to resemble a technical trust. *In re Forrest*, 47 F.4th 1229, 1238 (11th Cir. 2022). For a debtor to be acting in a fiduciary capacity under § 523(a)(4), "the fiduciary relationship must have (1) a trustee, who holds (2) an identifiable trust res, for the benefit of (3) an identifiable beneficiary or beneficiaries." *Forrest*, 47 F.4th at 1241.

Pravati asserts that the Agreement created "trust-like" obligations requiring the Law Firm, and Debtor, as owner, to allocate and deliver to Pravati its portion of the fees and costs from the Law Firm cases, along with providing Pravati with monthly financials and other duties.[39] Because Debtor allegedly concealed the Law Firm's monthly financials after the Agreement and did not remit Pravati's portion of the fees and costs, Pravati argues the Judgment is nondischargeable.

[39] Doc. No. 118, p. 13.

Pravati failed to demonstrate by a preponderance of the evidence that the Judgment is for fraud or defalcation while acting in a fiduciary capacity. "As the Supreme Court has explained, 'debt for' is used throughout [§ 523(a)] to mean 'debt as a result of,' 'debt with respect to,' 'debt by reason of,' and the like." *SE Prop. Holdings, LLC v. Gaddy (In re Gaddy)*, 977 F.3d 1051, 1058 (11th Cir. 2020)(quoting *Cohen v. de la Cruz*, 523 U.S. 213, 220 (1998)). The Agreement did not provide for any "trust like" obligations respecting the Funds—which is the debt at issue. As a result, Debtor could not have been acting in a fiduciary capacity as to the Funds. Although the Agreement does contain some "trust like" obligations, these obligations relate to fees and costs that would be received from the Law Firm's cases. Pravati did not show that the Judgment, or a portion thereof, consists of the fees and costs that were subject to these "trust like" obligations. Furthermore, the Court doubts whether Debtor, who is not a party to the Agreement, could be a fiduciary given the required strict and narrow application. *See Berkeley Fed. Sav. and Loan Ass'n v. Welden (In re Welden)*, 98 B.R. 590, 595 (Bankr. M.D. Fla. 1989)(debtor does not have fiduciary relationship by personally guaranteeing an agreement with trust obligations).

11 U.S.C. § 523(a)(6)

Any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity" may be excepted from discharge under § 523(a)(6). A malicious injury is one that is "wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill-will." *In re Kane*, 755 F.3d 1285, 1294 (11th Cir. 2014). The Supreme Court has noted for an injury to be willful, it must be "a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to an injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998).

Pravati argues that Debtor knew Pravati had a security interest in the Law Firm's accounts and receivables and that Law Firm had an obligation to report, segregate and remit to Pravati a

portion of the fees and costs from the Law Firm's cases. Because Law Firm, through Debtor, used Pravati's portion of the fees and costs for other uses, the Judgment is not dischargeable as a debt for willful and malicious injury.[40]

As with the analysis in § 523(a)(4), Pravati failed to show by a preponderance of the evidence that the Judgment is for a willful and malicious injury. Pravati did not show that the Judgment, or any portion thereof, consists of funds subject to Pravati's security interest. The Judgment debt relates to the Funds, which the Law Firm received before any alleged wrongdoing that Pravati contends is a willful and malicious injury. *See Gaddy*, 977 F.3d at 1059 (contract debt incurred before alleged willful and malicious conduct and not traceable to the debt is not a debt for willful and malicious injury).

## Conclusion

The exclusion of a debt from discharge must be for "real and substantial" reasons and not merely "technical or conjectural." *Equitable Bank v. Miller (In re Miller)*, 39 F.3d 301, 304 (11th Cir. 1994). Pravati did not establish the required elements under § 523 for the judgment debt to be deemed nondischargeable. Judgment will be entered in favor of Debtor by separate order.

Attorney Juliane M Brumbaugh is directed to serve a copy of this order on all interested parties who are non-CM/ECF users and file a proof of service within 3 days of entry of the order.

[40] Doc. No. 118, p. 14.